SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7124
    FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK G. BREWSTER and DAOMIN YANG, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL CHERTOFF, as Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of the U.S. Citizenship and Immigration Services; DAVID N. STILL, District Director of the U.S. Citizenship and Immigration Services for San Francisco and San Jose Sub Office; FRANCIS D. SICILIANO, Officer-in-Charge of the U.S. Citizenship and Immigration Service Sub Office for San Jose; ROBERT S. MUELLER, III, Director of the Federal Bureau of Investigation, <br><br> Defendants. | No. C 07-3011 RS <br><br> DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DECLARATION OF HAMZEH SARSOUR <br><br><br> Date:     December 19, 2007 <br> Time:    9:30 a.m. <br> Courtroom:  4, 5th Floor |

**PLEASE TAKE NOTICE** that on December 19, 2007, at 9:30 a.m., or as soon thereafter as the parties may be heard, Federal Defendants Michael Chertoff, Emilio T. Gonzalez, Francis Siciliano, Rosemary Melville and Robert Mueller (hereinafter "Defendants") will bring for hearing a motion for summary judgment of this action. The hearing will take place before the Honorable Richard Seeborg, in Courtroom 4, 280 S. 1st Street, San Jose, CA 95113.

    This Motion is based on the Memorandum of Points and Authorities, attached hereto, the

Defendants' Motion for Summary Judgment
C07-3011 RS                                                         1

1  declaration of Hamzeh Sarsour and all pleadings, papers and files in this action, and such oral
2  argument as may be presented at the hearing on the motion.

3  Dated: November 5, 2007                    Respectfully submitted,

4                                              SCOTT N. SCHOOLS
                                               United States Attorney
5
                                               JOANN M. SWANSON
6                                              Assistant United States Attorney
                                               Chief, Civil Division
7

8                                              _____
                                               ILA C. DEISS
9                                              Assistant United States Attorney
                                               Attorneys for Defendants

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rick Brewster, an attorney and United States citizen, and his wife, Daomin Yang, a citizen of China, ask this Court to issue a writ of mandamus, compelling Defendants to reach a decision on the applications for adjustment of status to legal permanent residents (LPR) of Plaintiff Yang, and her son Yufei Zhao. They also ask the Court to find that Defendants have violated the Administrative Procedure Act (APA), to issue a notice of approval, and to award fees under the Equal Access to Justice Act. Plaintiffs' claims must fail.

Plaintiff Brewster is an attorney who is improperly representing his family as a pro se. Further, Plaintiffs' applications remain pending because their name checks are not yet complete and remain with the Federal Bureau of Investigation (FBI). The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## II. FACTS

Plaintiff Ricky Brewster is a U.S. citizen and Plaintiffs Daomin Yang and her son, Yufei Zhao are natives and citizen of the People's Republic of China. *See* Declaration of Hamzeh Sarsour (Sarsour Decl.) ¶ 3 (attached as Exh. A). Mr. Brewster is a practicing attorney in the State of California, bar number 176512.

In October 23, 2003, Plaintiffs applied for adjustment of status to LPR based on Plaintiff Yang's marriage to Mr. Brewster. *Id.* On November 20, 2003 a request for background security name check for Plaintiff Daomin Yang was submitted electronically to the FBI by USCIS's California Service Center. A similar request was submitted for her son Yufei Zhao on June 29, 2005, after he turned 14. Those name checks remains pending. Sarsour Decl. ¶ 6.[1]

///

---

[1] Plaintiff made a request for discovery on September 23, 2007. Upon motion for clarification made by Defendants, the Court issued an Order on October 16, 2007, staying discovery until further order of the Court. Defendants agree with the Court that these matters usually resolve without needing discovery.

Defendants' Motion for Summary Judgment
C07-3011 RS                                              3

## III. GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

### B. Adjustment of Status

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[2] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of <u>an alien lawfully admitted for permanent residence</u>[.]

8 U.S.C. 1255(a) (emphasis added). Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status.

Before a decision is rendered on an alien's application to adjust status, USCIS, in

---

[2] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

conjunction with the FBI, conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. Sarsour Decl. ¶ 5. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. *See* 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. *Id.*

### C. Relief Available Under the Mandamus Act and the APA

Mandamus is an extraordinary remedy. *See Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

*Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "'mandamus does not lie to review the discretionary acts of officials.'" *See Nova Stylings Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983), quoting *Nelson v. Kleppe*, 457 F. Supp. 5, 8 (D. Idaho 1976). Mandamus may not be used to instruct an official how to exercise discretion. *Wilmot v. Doyle*, 403 F.2d 811, 816 (9th Cir. 1968).

Judicial review under the APA, 5 U.S.C. § 701, *et seq.*, is also specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Defendants' Motion for Summary Judgment
C07-3011 RS                                5

Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Where a plaintiff alleges a violation of the APA, the Court must decide whether Defendants' actions. Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 124 S. Ct. 2373, 2378-80, 159 L. Ed. 2d 137 (2004); *Rockbridge v. Lincoln*, 449 F.2d 567, 569-73 (9th Cir. 1971).

IV.    ANALYSIS

**A. Plaintiff Brewster, a licensed attorney, Cannot Represent His Wife Pro Se, in Federal Court**

As an initial matter, litigants in federal court have a statutory right to choose to act as their own counsel. 28 U.S.C. § 1654. Although a non-attorney may appear in *pro se* in his or her own behalf, that privilege is personal. *McShane v. United States*, 366 F.2d 286, 288 (9th Cir.1966). "A litigant appearing in propria persona has no authority to represent anyone other than himself [or herself]." *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962). Non-attorney litigants may not represent others. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir.1997); *Church of the New Testament v. U.S.*, 783 F.2d 771, 774 (9th Cir.1986). As such, to the extent the complaint has been filed on behalf of Plaintiff Brewster's wife, seeking an order from the Court compelling the adjudication of her application for adjustment of status, the claims must be stricken. Moreover, Mr. Brewster is active member of the California Bar and there is no evidence in the record that he is admitted to practice before this Court, or that he has applied for *pro hac vice* admission. *See* 28 U.S.C.A. § 1654.

**B. All Defendants Except Chertoff Should Be Dismissed**

Since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. *See* 6 U.S.C. §§ 271(b)(5), 557. Accordingly, the only relevant Defendant here is Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security, and all other Defendants should be dismissed. *See Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL

Defendants' Motion for Summary Judgment
C07-3011 RS                                6

2070325, at *6 (N.D. Cal. July 13, 2007); *Dmitriev v. Chertoff,* No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007).

### C. The Mandamus Act and the APA Cannot Provide Plaintiffs the Relief They Seek

#### 1.    Plaintiffs Seek To Compel Discretionary Actions

Mandamus is reserved for those situations in which the duty is ministerial, nondiscretionary, and so plainly prescribed as to be free from doubt. *Kildare*, 325 F.3d at 1078. A ministerial act is "devoid of the exercise of judgment or discretion." *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987). A duty is ministerial "where the officer can do only one thing." *Work v. United States*, 267 U.S. 175, 177 (1925).

Here, the statute itself commits the pace of processing Plaintiffs' applications to the discretion of the Attorney General. *See* 8 U.S.C. § 1255(a) (an alien's status "*may* be adjusted by the Attorney General, *in his discretion* and under such regulations as *he may* prescribe." (emphasis added)). The applicable regulations make it clear that the Secretary wished to vest USCIS with discretion in how to conduct the adjudication. *See e.g.*, 8 C.F.R.§ 245.6 (an "interview *may* be waived . . . when it is determined by the Service that an interview is unnecessary") (emphasis added); *see also id.* at § 103.2(b)(7) ("[The Service] *may* direct any necessary investigation") (emphasis added); *id.* at § 103.2(b)(18) ("A district director may authorize withholding adjudication") (emphasis added). Furthermore, USCIS has exercised its discretion in determining which name checks should be expedited. *See* Sarsour Decl., ¶ 15. Thus, although USCIS must eventually notify Plaintiffs of its decision on their applications, *see* 8 C.F.R. § 245.2, they are not entitled to a decision within any particular time-frame. *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003); *see also Eldeeb v. Chertoff, et al.*, No. 07cv236-T-17EAJ, 2007 WL 2209231, at *24 (M.D. Fla. July 30, 2007) (dismissing mandamus complaint, finding that USCIS does not owe a non-discretionary duty to an applicant to process an adjustment application at a certain pace).

Moreover, the FBI name check involves a discretionary function. *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ("The evidence shows that the

Defendants' Motion for Summary Judgment
C07-3011 RS                    7

delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."). Congress has not imposed a time frame on name checks for immigration benefits. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Further, numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." *Yan*, No. H-07-0313, 2007 WL 1521732, at *6; *see also Cardenas-Escalante v. Chertoff*, No. 07cv0212, slip op., p. 9 (S.D. Cal. May 30, 2007) ("Plaintiffs have not pointed to any statute or regulation requiring the FBI to complete background checks in any period of time, reasonable or not."); *Takkallapalli v. Chertoff*, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); *Li*, 482 F. Supp. 2d at 1179 (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); *Sozanski v. Chertoff, et al.*, No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases). Compelling USCIS to process Plaintiffs' applications in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner. Accordingly, Plaintiffs seek to compel a discretionary action, and relief is unavailable under either the Mandamus Act or the APA.

    2.    <u>Plaintiffs Seek To Compel Multiple Actions</u>

The United States Supreme Court's decision in *Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), mandates against granting relief. There, the Court determined that the APA's reference to "a failure to act" is limited to a *discrete* action that the agency is required to take. *Id.* at 64. Here, Plaintiffs ask the Court to compel multiple actions, including issuing a notice of approval. *See* Complaint, Prayer for Relief. As discussed above, USCIS has

Defendants' Motion for Summary Judgment
C07-3011 RS        8

exercised its discretion to determine which cases merit being moved to the head of the name check line for expedited processing. Plaintiffs can point to no law requiring USCIS to expedite their name check or setting a time frame upon the FBI's exercise of discretion in conducting the investigation. Accordingly, because these are not actions legally required or unlawfully withheld, relief is unavailable under the APA.

**D. The Delay is Reasonable**

Even if the actions at issue were not discretionary, Plaintiffs have failed to establish the existence of an unreasonable delay. To determine whether a delay is egregious, such that relief under the APA is warranted, several circuits have adopted the test first articulated in *Telecomm. Research and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). As outlined in *TRAC*, the factors for consideration include:

>   (1) the time agencies take to make decisions must be governed by a rule of reason;
>   (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>   (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake;
>   (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>   (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
>   (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80.

The court in *Sze v. INS*, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the *TRAC* test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. *Id*. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." *Id*. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." *Id*.; *see also Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (granting deference to agency's decision on how to handle competing applications for permanent labor certifications).

Defendants' Motion for Summary Judgment
C07-3011 RS                                                9

In *Liberty Fund*, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115. Applying the *TRAC* factors, the court held that without a statutory timetable governing agency action, the *TRAC* factor, "that weighs most heavily under the circumstances of the case is the fourth factor - the effect of granting relief on the agency's competing priorities." *Id.* at 116. The court reasoned that the agency's "first in, first out processing" was deserving of deference because any grant of relief to petitioners would result in no net gain - petitioners would move to the front of the queue at the expense of other similarly situated applicants. After examining the agency's priorities, growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus relief was not warranted. *Id.* at 119.

Just as in *Liberty Fund*, Plaintiffs' argument of unreasonable delay in this case must also fail. Plaintiffs ask this Court to find that USCIS has not adjudicated their I-485 applications in a reasonable period of time. Plaintiffs' legal arguments under Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed. Contrary to Plaintiffs' pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." *Fraga v. Smith*, 607 F. Supp. 517, 521 (D. Or. 1985) (citing *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." *Fraga*, 607 F. Supp. at 521.

       1.    <u>A Rule of Reason Governs the Agency Decisions at Issue</u>

The first *TRAC* factor requires an agency to govern decisions with a rule of reason. *TRAC*, 750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. *See Eldeeb*, 2007 WL 2209231, at *2. Once the FBI name check in this case has been completed, USCIS

will promptly adjudicate Plaintiff Yang and her son's applications. Sarsour Decl. ¶ 9. USCIS monitors the case on a weekly basis to determine whether the name check remains pending. *Id.*, ¶ 13. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

In Plaintiff Yang's case, this means that USCIS must await the results of the FBI name check before reaching a decision on her I-485 adjustment application, and the FBI must be given time to perform an accurate and thorough check. Sarsour Decl. ¶ 9. Her son is a beneficiary of her application. The FBI's "first in, first out" processing approach is a method that is "deserving of deference." *Liberty Fund*, 394 F. Supp. 2d at 118; *see also In re Barr Lab. Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

### 2. There Is No Congressionally Mandated Timetable

The second *TRAC* factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. *See* 8 U.S.C. §§ 1105(b)(1), 1255(a).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. *See, e.g., INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted

by Congress," *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. *See Cordoba v. McElroy*, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in *Eldeeb*, the FBI name check is a complex process. *Eldeeb*, 2007 WL 2209231, at *2. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. *Eldeeb*, 2007 WL 2209231, at *2. Of those remaining checks, 22 percent are returned within two months. *Id*. The FBI processes name checks chronologically, based on the date the name check is submitted. *Id.*

Before September 11, 2001, the FBI processed approximately 2.5 million name checks per year, checking only the "main" files. *Id.* at *3. In Fiscal Year 2006, the FBI processed over 3.4 million name checks. *Id*. In addition, the FBI began checking "reference" files. *Id*. This expansion of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit 2.7 million name check requests, for those with pending applications for immigration benefits. *Id.* at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks; because the FBI processes name checks chronologically, the processing of regular name checks has been delayed. *Id*. Name checks that exceed the two month window require personal attention of the processing agent. *Eldeeb*, 2007 WL 2209231, at *5. The FBI currently processes approximately 340,000 name checks per year by hand. *Id*. Thus, it is evident that there are substantial factors contributing to the backlog.

    3.    <u>The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks</u>

The third *TRAC* factor is the delay's impact on human health, welfare, and economic harm to Plaintiffs. This factor's analysis overlaps with the analysis of the fifth *TRAC* factor, the nature and extent of the interests prejudiced by the delay. *TRAC*, 750 F.2d at 80; *Liberty Fund*, 394 F. Supp. 2d at 118. Plaintiffs may be inconvenienced by the delay in adjudication,

but this individual interest cannot outweigh Defendants' interests in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. *See* The 9/11 Commission Report, 2004 WL 1634382 at 352 (Jul. 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Sarsour Decl. ¶ 16. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." *Liberty Fund*, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." *Safadi v. Howard*, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." *Patil v. Mueller, et al.*, No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations). Thus, when balancing the agencies' interests in defending against threats to national security against the Plaintiffs' interest in adjudication, the interests of the nation must prevail.

///

///

Defendants' Motion for Summary Judgment
C07-3011 RS                              13

### 4. The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

Similarly, the effect of expediting delayed agency action under the fourth <u>TRAC</u> factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); *see also Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.")

Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is not the only agency that engages in the FBI name check program. Notably, the FBI and USCIS processes' do not occur in vacuums. Any requirement that the FBI or USCIS process Plaintiffs' name check or applications within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits. Here, Plaintiffs' applications are under adjudication at the San Jose District Office. Sarsour Decl. ¶ 2. USCIS monitors cases with pending name checks on a weekly basis to identify those in which a response from the FBI has been received. *Id.*

The requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons. Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. *See In re Barr Lab.*, 930 F.2d at 75; *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering Plaintiffs' case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. *Manzoor v. Chertoff*, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); *see also Yan*, 2007 WL

Defendants' Motion for Summary Judgment
C07-3011 RS                              14

1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." *Wright*, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. *See Saleh v. Ridge*, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. *See Wright*, 587 F.2d at 345.

      5.     <u>The Agencies are Exercising Every Effort to Address the Delay</u>

The sixth and last *TRAC* factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." *Liberty Fund*, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiffs' FBI name check. Sarsour Decl. ¶ 9. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the *TRAC* factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiff Yang has failed to show that USCIS will refuse to adjudicate her application once the FBI completes the requisite name checks. *See Saleh*, 367 F. Supp. 2d at 513; *see also Eldeeb*, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps towards completing the background checks for adjudication of her

application. Specifically, USCIS is making every effort to complete adjudication as soon as the name check is completed. Sarsour Decl. ¶ 9.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. *See Clayton v. Chertoff,* 2007 WL 2904049 (N.D.Cal. Oct. 1, 2007)(a delay of two years or less is not unreasonable as a matter of law)*; Saleh*, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiffs in the present case insists that this Court find an unreasonable delay based solely on the amount of time passed since receipt of their applications. However, the law requires a more in-depth analysis for mandamus relief under the APA. A review of the six *TRAC* factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiff Yang's adjustment of status applications.

## V.  CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss all Defendants except Defendant Chertoff, and grant the remaining Defendant's motion for summary judgment as a matter of law.

Dated: November 5, 2007
Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

/s/
ILA C. DEISS
Assistant United States Attorney
Attorneys for Defendants

Defendants' Motion for Summary Judgment
C07-3011 RS                           16