DECLARATION OF HAMZEH SARSOUR

I, Hamzeh Sarsour hereby declare as follows:

1. I am employed by the United States Department of Homeland Security ( hereinafter "DHS"), U.S. Citizenship and Immigration Services (hereinafter "USCIS"), formerly known as the Immigration and Naturalization Service ("INS"). I am employed as a District Adjudication Officer at the San Jose Field Office. I have been employed by the Department of Homeland Security (formerly Department of Justice), USCIS since July 2001. During that time I have worked as a District Adjudication Officer in the naturalization and adjustment of status units.

2. This declaration is submitted in support of Defendants' motion for summary judgment in the case of Damin Yang and Yufei Zhao, No. C 07-03011 (A095 253 726 and A096 384 308) on the docket of the United States District Court for the Northern District of California. In my capacity as a District Adjudication Officer of USCIS, I have access to the official files and records of the USCIS. This declaration provides a factual summary of the agency's adjudication policy as well as a review of the plaintiff's file, electronic records, personal knowledge, and other information that has become known to me in the course of my official responsibilities concerning the adjudication of these applications.

3. Plaintiffs Daoming Yang and Yufei Zhao are mother and son, they are forty four years and seventeen years old respectively, natives and citizens of China. The record reflects that the plaintiff Daomin Yang was last admitted to the United States on April 12, 2003

1

as a returning H-1B employment visa holder. The record reflects further that Plaintiff Yufei Zhao was admitted to the United States on August 1, 2003 as an H-4 derivative employment visa holder. On January 14, 2003, plaintiff Yang married a United States citizen, Ricky Brewster in San Jose, California. On October 23, 2003 plaintiffs filed separate applications for adjustment of status on Form I-485 at the USCIS Office located at San Jose, California.

4. Plaintiffs Yang and Zhao filed for adjustment of status under Section 245 of the Immigration and Nationality Act ("INA"), as spouse and step child of United States citizen. They concurrently filed a petition for alien relative on form I-130.

5. When an individual files an I-485 application, USCIS conducts several forms of background checks to ensure that the applicant is eligible to adjust status to lawful permanent resident and that he or she is not a risk to national security or public safety. In addition to records checks against the Department of Homeland Security's (DHS) own immigration systems, these background checks currently include: (1) a FBI fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (2) a check against the Interagency Border Inspection System (IBIS), which contains records and watch list information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes of suspected of terrorism-related activity); and (3) a FBI name check,

which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS

6. On November 20, 2003, a request for background security FBI name check for the Plaintiff Daomin Yang was submitted electronically to the Federal Bureau of Investigation (FBI) by California Service Center. On June 29, 2005, an FBI name check request was made on plaintiff Yuefi Zhao. As of today's date, the FBI name check for Plaintiffs remains pending with the FBI.

7. The FBI name check was submitted for plaintiff Zhao upon reaching his fourteenth birthday.

8. The DHS-managed Interagency Border Inspection System (IBIS) background cleared on October 23, 2003 and was updated on March 3, 2004 and once again on October 3, 2007.

9. The Plaintiff and her spouse were interviewed in connection with the instant application on March 3, 2004. However, the application for adjustment of status filed by the Plaintiff was still awaiting the completion of the FBI name check and the case was continued pending final clearance and routed to the FBI Name Check Shelf. Therefore, at this time, the application for adjustment of status of the Plaintiff remains pending only for the completion of the FBI name check. Once the required FBI name check is completed, the application of the Plaintiffs can and will be adjudicated.

10.

11. FBI name check requests that have been received by the FBI but have not yet been completed are indicated by a notation of "Pending" in our FBIQUERY database. An FBI Name Check that has been completed will be indicated by various entries depending on the result, including No Record, Positive Response, etc.

12. Our reports will also identify those I-485 applications that have received a "No Data" or "Error" response in FBIQUERY indicating a problem with transmission of the name check request from USCIS to the FBI. If such a problem is reported, the FBI name checks requests will then be initiated a second time and resent manually or electronically to the FBI for a response. In this way USCIS ensures that the FBI has in fact received all requests for name checks.

13. All files on the FBI Name Check Shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least once every two weeks. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication. FBIQUERY reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or whether there are national security concerns relating to that alien.

14. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the

information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

15. Specifically, the USCIS San Jose Field Office receives on average approximately 550 Form I-485 applications each month. Each month, our office has approximately 950 adjustment of status cases that are waiting for the FBI name check to be completed.

16. The FBI has an established process of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. As stated above, certain requests can be expedited if they meet specific expedite criteria. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. There is no statutory or regulatory time limit for the adjudication of I-485s. Moreover, an alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her

obtain advance parole to enable them to travel abroad during the pendency of their application. Thus, applicants for adjustment of status are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

16. As the situation stands, there are three possibilities: (1) in the event that the FBI name check clears with a finding of "no record" or "NR," USCIS can approve the application within a few business days of being notified of the clearances, if the case is otherwise approvable; (2) in the event that the FBI reports a "positive response" or "PR," significant additional time would likely be required while USCIS await and learn the precise nature of the positive information and determine whether it would have any bearing on the outcome of the adjudication; and (3) as long as the FBI query continues to return its current response of "pending" or "IP," USCIS is unable to move beyond this point.

17. During the continued pendency of their applications, the plaintiffs are entitled to apply for and had received employment authorization documents as well as travel documents to permit them to travel outside of the United States.

18. I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of October 2007 at San Jose, California.

Hamzeh Sarsour
District Adjudication Officer
San Jose, California